[Crim. No. 16784. First Dist., Div. Four. Jan. 17, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES A. WHITNEY, Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, and Philip A. Schnayerson, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Douglass Garibaldi, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CALDECOTT, P. J.**—The principal issue presented on this appeal is whether the application of Vehicle Code section 23110, subdivision (b) (throwing a substance at a vehicle with intent to do great bodily harm) is limited to cases involving a *moving* vehicle. We conclude that it is not so limited.

Appellant Charles A. Whitney was convicted of a violation of Vehicle Code section 23110, subdivision (b). The appeal is from the order (judgment) granting probation.

Scott Elam, a bus driver for Greyhound Bus Lines, left the Hunter's Inn Motel at Willits with one Bobbie Stewart. As they left the motel they walked toward Elam's bus which was parked on the street by the side of the motel. Miss Stewart's car was parked just to the north of the bus in the motel parking lot. As they approached the bus, Miss Stewart cried out, "Oh, my God, that's Charlie," indicating a gold Fairlane which was parked directly behind her car. She explained that Charlie was her "ex-old man."

At that point, the appellant (Charlie), who was sitting in the driver's seat of the Fairlane, yelled out an obscene remark and added, "[D]on't mess with her. She'll get you in trouble." He then yelled to Miss Stewart, "I'll get your ass later." Appellant then backed his car away from Elam and Miss Stewart, drove west on Commercial Street, then turned south onto Highway 101.

Elam encouraged Miss Stewart to go home, but she was frightened. Elam promised to follow her home in his bus. They headed south on Highway 101, with Miss Stewart in the lead. After they had gone about two blocks, Elam saw appellant's car approaching in the northbound lane. As the Fairlane neared Miss Stewart's car, it swerved across the yellow dividing lines forcing Miss Stewart's car into the curb, and almost striking her car. Appellant then swerved quickly back into the northbound lane and continued on his way.

Elam and Stewart continued south and Miss Stewart pulled into the driveway of the motel where she lived. Elam also stopped by the driveway of the motel, leaving his bus parked on the highway. From his bus, he watched Miss Stewart enter her bungalow. While he was watching Miss Stewart he saw a movement out of the corner of his eye

and heard what sounded like a firecracker or a small gun. He then saw the gold Fairlane passing in the opposite direction. He noticed that the driver of the Fairlane had his left hand out the window. The hand was making a fast *throwing motion*. He immediately noticed the spiderweb crack in the windshield of the bus such as that which would be made from a bullet. The spiderweb crack was approximately two inches above Elam's head and one inch to the right of the center of his head.

When advised that he was under arrest for assault with a deadly weapon, appellant responded, "I don't even own a gun. Do you want to search my car?" The arresting officers searched his car and recovered an inoperative pellet gun, a loading rod for the pellet gun, an old $CO_2$ cartridge, and an armbrace slingshot. The slingshot was lying in the center of the front bench seat. The officers also searched the trunk of appellant's car, but found nothing unusual.

Appellant took the stand in his own defense. He acknowledged that he had had a relationship with Miss Stewart which had lasted for some period of time and which had ended with bad feelings. He further acknowledged that he owned the 1963 gold Ford Fairlane.

## I

Vehicle Code section 23110, subdivision (b) provides that any person who, with intent to do great bodily injury maliciously and willfully throws or projects any substance capable of doing serious bodily harm at a vehicle on a highway or at an occupant thereof, is guilty of a felony.[1] ▮ Appellant contends that, by necessary implication, an essential element of the offense is that the vehicle be *moving* along the highway when the object is thrown. He argues that the purpose of the Legislature in enacting section 23110, subdivision (b) was to prevent personal injuries and loss of life likely to ensue if a driver of a moving vehicle were distracted by any thrown object, and urges that the statute be so limited.

We do not feel that the restrictive construction urged by appellant is justified. In *Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566[2] at page 572 [133 Cal.Rptr. 241], the Fifth District Court of Appeal declared:

---

[1] *Vehicle Code section 23110, subdivision (b), was amended effective July 1, 1977. The amendments are not pertinent to this appeal.*

[2] *Petition for a hearing by the Supreme Court was denied December 2, 1976.*

"Turning to subdivision (a) of section 23110 of the Vehicle Code[3] . . . it is obvious that the Legislature enacted this law in an all-out effort to safeguard the traveling public and to protect the integrity of vehicles. Accordingly, as we interpret the law, it merely bars the throwing of any substance at a vehicle while it is *moving along* or is *parked on* a highway or a street, which could distract the driver, or result in his injury or in an injury to any occupant, *or do some mischief to the vehicle itself.* In other words, the paramount purpose of the statute in question is in furtherance of the rights of citizens to use the state's highways in safety without obstruction or interruption . . . ." (Italics added.) As subdivision (b) of section 23110 merely adds the additional elements of intent and capacity to do serious bodily injury, it is reasonable to presume that it was enacted for the same purpose as subdivision (a). We therefore conclude that section 23110, subdivision (b) does not require that the vehicle at which the substance is thrown be in motion. If the Legislature intended otherwise it could have easily limited the section by adding the word "moving" before the word "vehicle."

The cases relied upon by appellant do not support his position. (*People v. Spence* (1970) 3 Cal.App.3d 599 [83 Cal.Rptr. 711], disapproved on other grounds in *People v. Rocha* (1971) 3 Cal.3d 893, 899, fn. 8 [92 Cal.Rptr. 172, 479 P.2d 372]; *People v. Herrera* (1970) 6 Cal.App.3d 846 [86 Cal.Rptr. 165]; and *People v. Singletary* (1969) 276 Cal.App.2d 601 [81 Cal.Rptr. 79].) While it is true that in each of those cases the defendant had thrown a substance at a moving vehicle, none of them contains language which limits application of section 23110, subdivision (b) to moving vehicles.

## II

Appellant contends that the trial court committed prejudicial error in excluding evidence of Inspector Goss' discovery of bullet holes in the trunk of appellant's car and of an exploded can of spray paint located inside the trunk of the car. Appellant asserts that this exclusion of evidence resulted in the withdrawal of a material defense. The appellant claims that the evidence of the bullet and the exploded can of spray paint in the trunk of appellant's car suggests an alternative possibility that the holes in the windshield were actually caused by Elam firing a gun from within the bus, through a side window towards the back of

---

[3]Vehicle Code section 23110, subdivision (a), provides: "Any person who throws any substance at a vehicle or any occupant thereof on a highway is guilty of a misdemeanor."

appellant's car. It is alleged that one shot could have penetrated the car trunk while one or more shots could have ricocheted ·back, striking the bus' windshield and causing it to shatter. Appellant contends that this evidence should have been admitted, inasmuch as the report indicates that (1) the bullet was shot from a higher elevation, (2) possibly from a .32 caliber gun, (3) there appeared to be two points of impact on the bus window, (4) Elam had a motive, and (5) Elam owned a .38 caliber gun, the bullets of which are very near in size to those of a .32 caliber gun.

All relevant evidence is admissible, unless otherwise provided by statute. (Evid. Code, § 351.) Relevant evidence is any evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) ▮ In criminal cases, any evidence that tends to support or rebut the presumption of innocence is relevant. (*People* v. *Yeager* (1924) 194 Cal. 452, 486 [229 P. 40].) "[I]t is fundamental in our system of jurisprudence that all of a defendant's pertinent evidence should be considered by the trier of fact." (*People* v. *Mizer* (1961) 195 Cal.App.2d 261, 269 [15 Cal.Rptr. 272].)

▮ In the present case, appellant denied having shot a slingshot at Elam, and attempted to buttress this denial by establishing that the damages to Elam's windshield could have resulted from ricocheting bullets fired by Elam at appellant's car. ▮ A defendant may establish his innocence by proving directly or circumstantially that some other person or persons committed the crime with which he is charged. (*People* v. *Mitchell* (1893) 100 Cal. 328, 333-334 [34 P. 698]; *People* v. *Buono* (1961) 191 Cal.App.2d 203, 228 [12 Cal.Rptr. 604].) But the mere *possibility* that some third person did it is not enough. There must be some competent and substantial proof of a probability that this actually happened. (*People* v. *Mendez* (1924) 193 Cal. 39, 51-52 [223 P. 65], overruled on another point in *People* v. *McCaughan* (1957) 49 Cal.2d 409, 420 [317 P.2d 974]; *People* v. *Buono, supra.*) "[E]vidence which simply affords a possible ground of possible suspicion against another person should be inadmissible." (*People* v. *Buono, supra,* at p. 228; *People* v. *Arline* (1970) 13 Cal.App.3d 200, 204 [91 Cal.Rptr. 520].)

Evidence Code section 352 vests the trial court with discretion to exclude evidence if its probative value is outweighed by the probability that its submission would "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In a criminal case, evidence which simply affords a possible ground of suspicion against a

third person is generally excluded as unduly prejudicial. "[T]he prosecution as well as the defendant is entitled to the protection of the court from prejudicial evidence." (*People* v. *Arline, supra,* 13 Cal.App.3d at p. 205; *People* v. *Chapman* (1975) 50 Cal.App.3d 872, 881 [123 Cal.Rptr. 862].)

■ The requirement that proffered evidence afford more than a possible ground of suspicion was not met here. The evidence which appellant sought to introduce was set forth in a report written by Inspector Goss, and dated over a month after the incident occurred. Inspector Goss observed a bullet hole in the left rear fender area. He also noted that a blue spray paint can had exploded and paint had been sprayed in the interior part of the trunk. However, arresting officer, Kenneth Smith, testified that he and Sgt. Gray were invited by appellant to search his car on the morning of the incident. Smith testified that they searched the trunk area and found some tool boxes and fishing equipment, but observed nothing unusual. He further stated on cross-examination that, although he and Gray did not make a list of the trunk's contents, they did handle everything in the trunk. Finally, Elam testified that on the morning of the incident the gun that he carried as a reserve officer was locked in his suitcase in the bus. Under these circumstances, the evidence proffered by appellant had little or no probative value, and the possibility of confusing the issues and misleading the jury was obvious. Therefore, the trial court did not err in excluding this evidence.

### III

■ Appellant contends that the evidence was insufficient to support a finding of specific intent to do great bodily injury. We disagree.

■ The standard to be applied in determining the sufficiency of the evidence is whether there is substantial evidence, contradicted or uncontradicted, to support the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 497 [116 Cal.Rptr. 217, 526 P.2d 225]; *People* v. *Wheeler* (1977) 71 Cal.App.3d 902, 906 [139 Cal.Rptr. 737].) "Where the circumstances reasonably justify the conclusion of the trier of fact, the opinion of the reviewing court that circumstances may also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment. [Citations.]" (*People* v. *Rupert* (1971) 20 Cal.App.3d 961,

969-970 [98 Cal.Rptr. 203]; *People* v. *Culver* (1973) 10 Cal.3d 542, 548 [111 Cal.Rptr. 183, 516 P.2d. 887].)

■ Direct evidence of intent is not necessary. Its existence can be inferred from acts, declarations, and circumstances connected with the offense. (*People* v. *Van Wyke* (1949) 91 Cal.App.2d 839, 842 [206 P.2d 53]; see *People* v. *Phillips* (1960) 186 Cal.App.2d 231, 240 [8 Cal.Rptr. 830]; *People* v. *Corral* (1964) 224 Cal.App.2d 300, 304 [36 Cal.Rptr. 591].) If circumstantial evidence reasonably supports the verdict, the appellate court will not reverse. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 718 [140 Cal.Rptr. 299].)

■ In the record before us, there is ample circumstantial evidence to support the jury's finding of intent to do great bodily harm. Appellant saw Elam leaving a motel room with Bobbie Stewart, appellant's former girl friend, at which time he shouted an obscene remark. Appellant later swerved his car into the oncoming traffic lane, narrowly missing the car in which Miss Stewart was traveling. Finally, the projectile which appellant shot from his slingshot hit the window at a point two inches from Elam's head. Although appellant denied feeling any hostility or animosity toward Elam, on the basis of the foregoing evidence, the jury could reasonably infer the requisite intent to do great bodily harm.

The order (judgment) granting probation is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1978.